IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHERINE BLUMENKRON, DAVID
BLUMENKRON, and SPRINGVILLE
INVESTORS, LLC,

        Plaintiffs,

v.

BARTON EBERWEIN, in his
official capacity as a member
of the Land Conservation &
Development Commission; GREG
MACPHERSON, in his official
capacity as a member of the
Land Conservation & Development
Commission; TOM HUGHES, in his
official capacity as a Metro
Councilor; SHIRLEY CRADDICK, in
her official capacity as a Metro
Councilor; CARLOTTA COLLETTE, in
her official capacity as a Metro
Councilor; KATHRYN HARRINGTON,
in her official capacity as a
Metro Councilor; MULTNOMAH
COUNTY; SHERMAN LAMB, in his
official capacity as a member of
the Land Conservation &
Development Commission; CATHERINE
MORROW, in her official capacity
as a member of the Land

3:12-cv-00351-BR

OPINION AND ORDER

1 - OPINION AND ORDER

Conservation & Development
Commission; ROBIN
MCARTHUR, in her official
capacity as a member of the Land
Conservation & Development
Commission; JERRY LIDZ, in
his official capacity as a member
of the Land Conservation &
Development Commission; MELISSA
CRIBBINS, in her official capacity
as a member of the Land
Conservation & Development
Commission; CRAIG DIRKSEN, in his
official capacity as a Metro
Councilor; SAM CHASE, in his
official capacity as a Metro
Councilor; and BOB STACEY, in his
official capacity as a Metro
Councilor,

             **Defendants.**

**CHRISTOPHER JAMES**
The James Law Group, LLC
121 S.W. Morrison Street, Suite 910
Portland, OR 97204
(503) 228-5380

       Attorneys for Plaintiffs

**ELLEN F. ROSENBLUM**
Oregon Attorney General
**DARSEE STALEY**
**JACQUELINE SADKER KAMINS**
Assistant Attorneys General
Oregon Department of Justice
1515 S.W. Fifth Avenue, Suite 410
Portland, OR 97201
(971) 673-1880

       Attorneys for Defendants Barton Eberwein, Greg
       MacPherson, Sherman Lamb, Catherine Morrow, Robin
       McArthur, Jerry Lidz, and Melissa Cribbins

**ALLISON KEAN CAMPBELL**
**MICHELLE A. BELLIA**
Office of Metro Attorney
600 NE Grand Avenue
Portland, OR 97232
(503) 797-1511

      Attorneys for Defendants Tom Hughes, Shirley Craddick,
      Carlotta Collette, Kathryn Harrington, Craig Dirksen,
      Sam Chase, and Bob Stacey

**DAVID N. BLANKFELD**
**JED R. TOMKINS**
Office of the Multnomah County Attorney
501 S.E. Hawthorne Boulevard, Suite 500
Portland, OR 97214
(503) 988-3138

      Attorneys for Defendant Multnomah County

**BROWN, Judge.**

This matter comes before the Court on the following Motions:

1.   Motion (#132) to Dismiss filed by Defendants Melissa Cribbins, Barton Eberwein, Sherman Lamb, Catherine Morrow, Robin McArthur, Jerry Lidz, and Greg MacPherson (collectively referred to herein as State Defendants);

2.   Motion (#133) to Dismiss Fifth Amended Complaint filed by Defendant Multnomah County;[1] and

3.   Motion (#134) to Dismiss Pursuant to Fed. R. Civ. P. 12(b) filed by Defendants Sam Chase, Carlotta Collette, Shirley Craddick, Craig Dirksen, Kathryn Harrington, Tom Hughes, and Bob

---

[1] Although Docket #133 is titled "Memorandum in Support of Multnomah County's Motion to Dismiss Fifth Amended Complaint," it is actually Defendant Multnomah County's Motion and Memorandum in Support as one document as allowed under Local Rule 7-1(c).

Stacey (collectively referred to herein as Metro Defendants).

Through the course of litigating these Motions, however, the parties have relied extensively on factual material outside of Plaintiffs' pleadings.  Accordingly, on July 21, 2015, the Court **CONVERTED** State Defendants' Motion (#132) to Dismiss, Multnomah County's Motion (#133) to Dismiss, and Metro Defendants' Motion (#134) to Dismiss into Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d) and gave the parties an opportunity to submit additional materials appropriate for summary judgment motions.

For the reasons that follow, the Court **GRANTS** the State Defendants' Motion (#132) for Summary Judgment, Multnomah County's Motion (#133) for Summary Judgment, and Metro Defendants' Motion (#134) for Summary Judgment and **DISMISSES** this matter **without prejudice**.


## BACKGROUND

Metro is a metropolitan service district responsible for, among other services, coordinating land-use planning in the Portland metropolitan area.  Metro serves an area covering portions of Multnomah County, Washington County, and Clackamas County (collectively referred to herein as the Counties).  Metro is responsible for certain land-use planning regulations, including the adoption of an urban-growth boundary (UGB) around

4 - OPINION AND ORDER

the Portland metropolitan area that sets the outer boundary for urban development.

The Oregon State Legislature, however, has provided for a process whereby Metro and the Counties may, under certain circumstances, designate some areas outside of the UGB as "urban reserves" in which greater development may be permitted or "rural reserves" in which additional development is prohibited for a period of up to 50 years.

In their Fifth Amended Complaint Plaintiffs raise several federal constitutional challenges to Defendants' designation of an area in Multnomah County that includes Plaintiffs' land as a "rural reserve" for long-term, land-use planning purposes.

I.    **Statutory Substantive Standards**

In 2007 the Oregon State Legislature authorized Metro and the Counties jointly and concurrently to designate lands outside of Portland's UGB as urban reserves or rural reserves.

Metro and the Counties were to designate urban reserves "[t]o ensure that the supply of land available for urbanization is maintained." Or. Rev. Stat. § 195.145(1). The maximum allowable amount of urban reserves is determined according to the UGB planning period. The UGB must be set in a way that is sufficient to accommodate housing needs for 20 years. *See* Or. Rev. Stat. § 197.296(2). Urban reserves also "must be planned to accommodate population and employment growth for at least 20

years, and not more than 30 years" after the 20-year UGB planning period.  Or. Rev. Stat.    § 195.145(4).  In effect, therefore, Metro and the Counties must designate enough urban reserves to accommodate projected population and employment growth for at least the next 40 years but no more than 50 years.  When determining the land to designate as an urban reserve, Metro and the Counties are to consider factors including, but not limited to, whether the land

>    (a)  Can be developed at urban densities in a way that makes
>         efficient use of existing and future public
>         infrastructure investments;
>
>    (b)  Includes sufficient development capacity to support a
>         healthy urban economy;
>
>    (c)  Can be served by public schools and other urban-level
>         public facilities and services efficiently and
>         cost-effectively by appropriate and financially capable
>         service providers;
>
>    (d)  Can be designed to be walkable and served by a
>         well-connected system of streets by appropriate service
>         providers;
>
>    (e)  Can be designed to preserve and enhance natural
>         ecological systems; and
>
>    (f)  Includes sufficient land suitable for a range of
>         housing types.

Or. Rev. Stat. § 195.145(5).

Rural reserves are to be designated "to provide long-term protection to the agricultural industry."  Or. Rev. Stat. § 195.141(3).  Unlike urban reserves, the Legislature did not place any limitation on the amount of rural reserves that Metro

and the Counties can designate.  When designating rural reserves,

Metro and the Counties are to consider factors including, but not

limited to, whether the land

> (a)  Is situated in an area that is otherwise potentially
>      subject to urbanization during the period described in
>      subsection (2)(b) of this section, as indicated by
>      proximity to the urban growth boundary and to
>      properties with fair market values that significantly
>      exceed agricultural values;
>
> (b)  Is capable of sustaining long-term agricultural
>      operations;
>
> (c)  Has suitable soils and available water where needed to
>      sustain long-term agricultural operations; and
>
> (d)  Is suitable to sustain long-term agricultural
>      operations, taking into account:
>
>>  (A)  The existence of a large block of agricultural or
>>       other resource land with a concentration or
>>       cluster of farms;
>>
>>  (B)  The adjacent land use pattern, including its
>>       location in relation to adjacent nonfarm uses and
>>       the existence of buffers between agricultural
>>       operations and nonfarm uses;
>>
>>  (C)  The agricultural land use pattern, including
>>       parcelization, tenure and ownership patterns; and
>>
>>  (D)  The sufficiency of agricultural infrastructure in
>>       the area.

Or. Rev. Stat. § 195.141(3).  Land designated as a rural reserve

cannot be included within a future expansion of the UGB or

redesignated as an urban reserve during the urban-reserve

planning period.  Or. Rev. Stat. § 195.141(2).  Rural reserves,

therefore, are "essentially not subject to urban development for

up to a total period of 40 to 50 years."  *Barkers Five, LLC v.*

7 - OPINION AND ORDER

*Land Conservation and Dev. Comm'n*, 261 Or. App. 259, 274 (2014).

## II.  Regulatory Substantive Standards

In addition to the substantive standards mandated by statute, the Oregon Legislature gave the LCDC rule-making authority to establish a "process and criteria for designating" urban and rural reserves.  *See* Or. Rev. Stat. §§ 195.141(4), 195.145(6).  LCDC rules define the purpose of the urban- and rural-reserve designation process:

> The objective of this division is a balance in the designation of urban and rural reserves that, in its entirety, best achieves livable communities, the viability and vitality of the agricultural and forest industries and protection of the important natural landscape features that define the region for its residents.

Or. Admin. R. 660-027-0005(2).

The LCDC rules setting out the substantive criteria that govern the designation of urban reserves incorporate the statutory factors from § 195.145(5) in addition to the following factors:

> (7) Can be developed in a way that preserves important natural landscape features included in urban reserves; and
>
> (8) Can be designed to avoid or minimize adverse effects on farm and forest practices, and adverse effects on important natural landscape features, on nearby land including land designated as rural reserves.

Or. Admin. R. 660-027-0050.  LCDC rules also incorporate the cap that Oregon Revised Statute § 195.145(4) places on the amount of

8 – OPINION AND ORDER

land that can be designated as urban reserves and, in addition,
provide:

> Metro shall specify the particular number of years for
> which the urban reserves are intended to provide a
> supply of land, based on the estimated land supply
> necessary for urban population and employment growth in
> the Metro area for that number of years. The 20 to
> 30-year supply of land specified in this rule shall
> consist of the combined total supply provided by all
> lands designated for urban reserves in all counties
> that have executed an intergovernmental agreement with
> Metro in accordance with OAR 660-027-0030.

Or. Admin. R. 660-027-0040.

The LCDC rules setting out the substantive criteria that
govern the designation of rural reserves incorporate the
statutory factors from § 195.141(3), extend those factors to
apply to the timber industry in addition to agriculture, and add
a set of factors that permit the designation of land as a rural
reserve "to protect natural landscape features." Or. Admin. R.
660-027-0060(2), (3). Although Metro and the Counties are
generally required to apply the statutory and regulatory factors
when determining whether any specific area will be designated as
a rural reserve, the LCDC rules contain two exceptions to this
requirement: (1) Under Oregon Administrative Rule 660-027-
0060(4), Metro and the Counties may "deem that Foundation
Agricultural Lands or Important Agricultural Lands[2] within three

---

[2] Foundation Agricultural Lands and Important Agricultural
Lands are those lands previously designated as such by the Oregon
Department of Agriculture. *See* Or. Admin. R. 660-027-0010(1),
(2).

miles of a UGB qualify for designation as rural reserves . . . without further explanation" and (2) under Oregon Administrative Rule 660-027-0040(11) to the extent that the Counties and Metro designate Foundation Agricultural Land as an urban reserve, Metro and the Counties must provide a specific statement of reasons to explain why that land was chosen for designation as an urban reserve and other land was not.

## III. Procedural Framework and History

"The designation of urban and rural reserves occurs through agreements between Metro and a county." *Barkers Five*, 261 Or. App. at 275. *See also* Or. Rev. Stat. §§ 195.141(1), 195.143(2), 195.145(1)(b). Accordingly, the urban- and rural-reserve designations are made through intergovernmental agreements between Metro and the individual County.

Between May 13, 2010, and June 15, 2010, Metro and the Counties made their respective urban- and rural-reserve designation decisions and applied the statutory and regulatory factors on an area-wide basis; *i.e.*, rather than apply the factors and make designation decisions on a property-by-property basis, Metro and the Counties subdivided the Portland metropolitan map into a rough grid of "areas" that each contained multiple properties and then made the designation decisions on an area-wide basis.

On June 23, 2010, Metro and the Counties submitted to LCDC

10- OPINION AND ORDER

their joint and concurrent decision in which Metro and the
Counties designated 28,615 acres as urban reserves and 266,954
acres as rural reserves to achieve Metro-wide land-use planning
goals through 2060.

Pursuant to Oregon Administrative Rule 660-027-0080(4), LCDC
was required to review the submission of Metro and the Counties
for

> (a) Compliance with the applicable statewide planning
> goals.  Under ORS 197.747 "compliance with the
> goals" means the submittal on the whole conforms
> with the purposes of the goals and any failure to
> meet individual goal requirements is technical or
> minor in nature.  To determine compliance with the
> Goal 2 requirement for an adequate factual base,
> the Commission shall consider whether the
> submittal is supported by substantial evidence.
> Under ORS 183.482(8)©, substantial evidence exists
> to support a finding of fact when the record,
> viewed as a whole, would permit a reasonable
> person to make that finding;
>
> (b) Compliance with applicable administrative rules,
> including but not limited to the objective
> provided in OAR 660-027-0005(2) and the urban and
> rural reserve designation standards provided in
> OAR 660-027-0040; and
>
> (c) Consideration of the factors in OAR 660-027-0050
> or 660-027-0060, whichever are applicable.

In October 2010 LCDC held a hearing concerning the designations
of Metro and the Counties.  At that hearing LCDC approved the
designations as to all but two areas in Washington County and
remanded those designations to Metro and Washington County for
further consideration.

On May 13, 2011, Metro and the Counties re-submitted their

11- OPINION AND ORDER

urban- and rural-reserve designations to LCDC after Metro and
Washington County "'adjusted the urban and rural reserve
designations in Washington County' in several ways," which
resulted in a decrease of 299 acres designated as urban reserves,
a decrease of 120 acres of rural reserves, and an increase of 419
acres in "undesignated" lands.  *See Barkers Five*, 261 Or. App. at
283-84.  As a result, Metro and the Counties designated a total
of 28,256 acres as urban reserves and 266,628 acres as rural
reserves.

On August 18 and 19, 2011, the LCDC conducted a hearing at
which it considered 14 objections to the proposed designations.
On August 19, 2011, at the conclusion of that hearing, the LCDC
voted to acknowledge in their entirety the urban- and rural-
reserve designations submitted by Metro and the Counties and
issued a 156-page Acknowledgment Order to memorialize its
decision.  *See* Or. Rev. Stat. § 197.626(2).

Several objectors, including Plaintiffs, appealed the LCDC's
Acknowledgment Order to the Oregon Court of Appeals pursuant to
Oregon Revised Statute § 197.626(3).  The Oregon Court of Appeals
affirmed part of the LCDC's Acknowledgment Order (and, thus, the
designations of Metro and the Counties), but the court concluded
the LCDC erred in the following four respects:

(1)  By determining it had the authority to affirm a
     decision of Metro and the Counties on the ground that

the evidence "clearly supports" their decision even
though the local government's findings were inadequate.

(2)  By approving the legally impermissible application of
the rural-reserve factors to agricultural land in
Washington County.  Accordingly, the Court of Appeals
ordered LCDC to remand Washington County's reserves
designation "as a whole."

(3)  By approving the legally insufficient rural-reserve
designation of Area 9D in Multnomah County.
Accordingly, the Court of Appeals ordered LCDC to
remand for reconsideration of the designation of Area
9D and further ordered LCDC to "determine the effect of
that error on the designations of reserves in Multnomah
County in its entirety."

(4)  By failing to adequately review the designations of
Areas 4A through 4D in Clackamas County as urban
reserves.  The Court of Appeals ordered LCDC to
"meaningfully explain why . . . the designation of
[Areas 4A through 4D] as urban reserves is supported by
substantial evidence."

*Barkers Five*, 261 Or. App. at 363-64.

In its "Remand Order" dated March 16, 2015, the LCDC
ordered:

The Commission incorporates by reference those findings
and conclusions of Compliance Acknowledgment Order

13- OPINION AND ORDER

12-ACK-001819 concerning the application of urban and rural reserve factors to designate certain areas as either urban or rural reserves in Clackamas and Multnomah counties, except those findings and conclusions related to the designations of Rural Reserve Area 9D and Urban Reserve Areas 4A, 4B, 4C, and 4D. Accordingly, Commission [*sic*] remands Rural Reserve Area 9D to Multnomah County and Metro and Urban Reserve Areas 4A, 4B, 4C, and 4D to Metro and Clackamas County for further action consistent with the principles expressed in [*Barker's Five*].

Before final acknowledgment, the Commission will review a resubmittal of the Metro Region urban and rural reserves designations for acknowledgment of compliance with ORS 195.141 and 195.145, OAR chapter 660, division 27, the applicable statewide planning goals, and all other applicable rules of the Commission.

Although the LCDC did not specifically order Metro and Multnomah County to reconsider designations other than Area 9D, it did not preclude Metro and Clackamas County from doing so. As noted, the Oregon Court of Appeals required Multnomah County to "determine the effect" of the error with respect to Area 9D "on the designations of reserves in Multnomah County in its entirety." *Barkers Five*, 261 Or. App. at 364. The LCDC also incorporated into the Remand Order the findings from the Acknowledgment Order that were not reversed by the Court of Appeals.

## IV. Plaintiffs' Property

Plaintiffs own property in an L-shaped portion of Area 9B, a portion of Multnomah County that has been designated as a rural reserve under the May 13, 2011, urban- and rural-reserve submission to LCDC. Area 9B (and, therefore, Plaintiffs' property) is near the community of North Bethany in west

14- OPINION AND ORDER

Multnomah County.  Area 9B was among the most thoroughly debated areas during Multnomah County's designation process.  Ultimately the Multnomah County Commission voted 3-2 to designate Area 9B as a rural reserve.

Both LCDC and the Oregon Court of Appeals affirmed the designation of Area 9B as a rural reserve over Plaintiffs' objection.  Accordingly, although Metro and Multnomah County may still reconsider their designation of Area 9B, both LCDC and the Oregon Court of Appeals have determined the designation of Area 9B in isolation is lawful.

Since remand the Oregon State Legislature has considered an amendment that would change the rural-reserve designation of "the L" within Area 9B and split it into three sections with one portion designated as urban reserve, another portion remaining undesignated, and a third portion designated as rural reserve. The legislative session has closed, however, and there is not any evidence that the Legislature took up action on the amendment that proposed designation changes in "the L" nor is there any evidence as to whether the Legislature may again consider such an amendment when it is in session again.  Nonetheless, because LCDC remanded the designation of Area 9D to Multnomah County and the Oregon Court of Appeals specifically ordered Multnomah County to consider the effect of the redesignation of Area 9D on other areas, the Multnomah County urban- and rural-reserve designation

15- OPINION AND ORDER

process has reopened and Plaintiffs will again have an opportunity to persuade Multnomah County to change the designation of Area 9B or a portion thereof.


## STANDARDS

Summary judgment is appropriate when there is not a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*.  "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all

16- OPINION AND ORDER

reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

**DISCUSSION**

As noted, Plaintiffs raise several federal constitutional challenges to Defendants' designation of an area that includes Plaintiffs' land as a rural reserve.  At the heart of Plaintiffs' challenges is their claim that Defendants treated Plaintiffs' land differently from similarly situated lands without a rational basis for doing so.  Plaintiffs seek both damages pursuant to 42 U.S.C. § 1983 and declaratory and injunctive relief.

Defendants contend, among other things, that they are entitled to summary judgment on the basis that this case is not presently justiciable because the matter is not ripe for review. Because the Court ultimately concludes this case is not ripe, the Court need not address Defendants' other contentions.

## I.  Ripeness Standard

"Ripeness reflects constitutional considerations that implicate 'Article III limitations on judicial power' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)(quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).  Thus, the "doctrine of ripeness . . . contains 'both a constitutional and prudential component.'" *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014)(quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)).

Prudential ripeness "has a 'twofold aspect, requiring'" the

18- OPINION AND ORDER

court "'to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015)(quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

"'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)(quoting *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989)). *See also Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). In the context of a challenge to an administrative action, courts "consider 'whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)(quoting *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)). "Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012).

"'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *Stormans, Inc.*, 586 F.3d at 1126 (quoting *US West Commc'ns*, 193 F.3d at 1118)).  When determining whether a litigant has shown that withholding review would result in a direct hardship, the court considers "whether the 'regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" *Stormans, Inc.*, 586 F.3d at 1126 (quoting *Ass'n of Am. Med. Colls.*, 217 F.3d at 783).

## II.  Analysis

Defendants contend this matter is not ripe in light of the Oregon Court of Appeals' partial reversal of LCDC's Acknowledgment Order and LCDC's subsequent Remand Order. Defendants specifically argue Plaintiffs are not challenging a final action because under the Remand Order (1) Metro and Multnomah County may (even if they are not required to) reconsider designation of the area that includes Plaintiffs' property and (2) on resubmittal of designations by Metro and Multnomah County, the LCDC will review a resubmittal of the Metro Region urban and rural reserves designations for acknowledgment of compliance with the relevant statutes and LCDC rules.

Plaintiffs, in turn, contend this action is ripe because

Plaintiffs specifically seek damages for past constitutional violations under 42 U.S.C. § 1983, and Plaintiffs' property remains encumbered by the rural-reserve designation.  Moreover, Plaintiffs contend they will suffer undue hardship in the event that this Court declines to adjudicate Plaintiffs' claims at this time becase Plaintiffs continue to suffer harm by way of diminished land values and limitations on development.

### A.    Fitness for Judicial Decision

As noted, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *US West Commc'ns*, 193 F.3d at 1118.  *See also Wolfson*, 616 F.3d at 1060.

Here Plaintiffs' claims for prospective relief are not "fit" for judicial review at this time because pending municipal and legislative actions create sufficient uncertainty in the urban- and rural-reserve designation process to render the challenged action nonfinal and necessitate further factual development before this Court can consider Plaintiffs' constitutional challenges.

Although Metro and Multnomah County are not required under the *Barkers Five* decision and the LCDC's subsequent Remand Order to reconsider the rural-reserve designation of Area 9B (which includes Plaintiffs' property), the designation of Area 9B is, nonetheless, not final because it has not yet been finally

21- OPINION AND ORDER

acknowledged by LCDC and it is not independent of the designations of areas such as Area 9D, which Metro and Multnomah County are required to reconsider under the Remand Order and *Barker's Five*.

As noted, Oregon Revised Statute § 195.145(4) provides the total amount of urban reserves designated by Metro "must be planned to accommodate population and employment growth for at least 20 years, and not more than 30 years" after the 20-year UGB planning period. Thus, the designation of Area 9B is not final or independent of other nonfinal designations of certain areas in the Portland metropolitan area. Instead, the designation of urban and rural reserves throughout the Portland metropolitan area requires a careful balancing of land-use interests on both a county-by-county and a Metro-wide scale. In other words, changes made to designations in other parts of the metropolitan area (perhaps including those areas of Multnomah County that require further consideration) could trigger reconsideration of the designation of Area 9B in order to meet the statutory and regulatory requirements for the Metro-wide urban- and rural-reserves designations. Moreover, since the remand there have been actions in the Oregon State Legislature that, if passed, would result in the re-designation of portions of Area 9B. Although the most recent legislative session has now ended apparently without the proposal or passage of any such

legislation, the fact that such an amendment has been under consideration underscores the dynamic nature of the urban- and rural-reserve designation process and any decision-making regarding Plaintiffs' property.  Finally, a meaningful opportunity remains for Plaintiffs to convince Multnomah County and Metro to change the designation of Area 9B.  The Court cannot conclude on this record, therefore, that the designation of Area 9B as a rural reserve is final and that Plaintiffs' claims for prospective relief are fit for judicial review.

Plaintiffs' claims for damages fare no better.  Contrary to Plaintiffs' contentions, their land is not currently encumbered by its rural-reserve designation.  Oregon Revised Statute § 197.175(2)(c) and (d) provide cities and counties shall only make land-use decisions in compliance with the comprehensive plan if that comprehensive plan has been acknowledged by LCDC.  Thus, to the extent that Plaintiffs' property remains encumbered by land-use limitations, those limitations do not stem from the rural-reserve designation at issue.  Although Plaintiffs conceivably could have incurred damages while LCDC's August 19, 2011, Acknowledgment Order was on appeal, there is not any evidence in the record that during that period Plaintiffs actually incurred or that they are presently incurring any damages.  Finally, considering Plaintiffs' claims for prospective relief are substantively identical to Plaintiffs' claims for

23- OPINION AND ORDER

damages, it would be improvident to proceed on Plaintiffs' claims
for damages while Plaintiffs' prospective claims are unfit for
judicial review.

In summary, in light of the possibility of material changes
at the municipal, state administrative, and legislative level
during the pendency of this action, the Court concludes on this
record that this action is not presently ripe for judicial
decision.

**B.    Hardship to the Parties**

Although there is not any evidence in this record from which
the Court can conclude Plaintiffs will suffer undue hardship as
the result of a finding that this case is not presently ripe for
judicial decision, Plaintiffs nevertheless contend they will
suffer undue hardship if the Court does not immediately
adjudicate their claims because their property is currently
encumbered and their land values are currently diminished by the
rural-reserve designation.

As noted, however, the rural-reserve designation of
Plaintiffs' property is not in effect until LCDC issues its final
acknowledgment.  *See* Or. Rev. Stat. § 197.175(2)(c),(d).

In any event, Plaintiffs have not presented any evidence
from which this Court could conclude they would suffer undue
hardship even if the rural-reserve designation was currently in
effect.  Even if Plaintiffs' ability to develop their land was

currently limited or the land values currently diminished, Plaintiffs have not submitted any evidence from which the Court could conclude that Plaintiffs will thereby suffer undue hardship. For example, Plaintiffs have not stated they intend to sell their land, to obtain a loan secured by a mortgage on their land, or to develop their land in a way inconsistent with the rural-reserve designation during the period between now and the time that the designations will be finalized. Moreover, Plaintiffs can, if necessary, renew their claims when the designations are final.

On this record, therefore, the Court concludes Plaintiffs will not suffer undue hardship as a result of this Court's decision not to review the designation at issue until the urban- and rural-reserve designation process has been finalized.

Accordingly, the Court concludes this action is not ripe for judicial review.


## CONCLUSION

For these reasons, the Court **GRANTS** the State Defendants' Motion (#132) for Summary Judgment, Multnomah County's Motion (#133) for Summary Judgment, and Metro Defendants' Motion (#134) for Summary Judgment and **DISMISSES** this matter **without prejudice**. The Court **GRANTS** Plaintiffs leave to renew their claims in the event that Plaintiffs' claims remain viable after Defendants have

25- OPINION AND ORDER

rendered a final decision regarding the urban- and rural-reserve
designations in the Portland metropolitan area.

IT IS SO ORDERED.

DATED this 28th day of September, 2015.


                              /s/ Anna J. Brown

                              _____
                              ANNA J. BROWN
                              United States District Judge


26- OPINION AND ORDER